# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

No. 25-1693

SAVANNAH D. BYERS, Individually & as Administratrix of
the Estate of Eric S. Byers, deceased; CYNTHIA L. BARNES,
Individually & as Administratrix of the Estate of Richard L.
Barnes, deceased; CODY ASH; CODY KING;
DYLAN ALDRIDGE; et al.,
Appellants

v.

FINISHING SYSTEMS, INC.; EDWIN L. HEIM CO.; JOHN & JANE
DOES (1–10); ABC CORPS. (A–Z); FIRESTOP SOLUTIONS,
INC.; et al.

_____

On Appeal from the U.S. District Court, M.D. Pa.
Judge Jennifer P. Wilson, No. 1:20-cv-02110

Before: RESTREPO, BIBAS, and PHIPPS, *Circuit Judges*
Argued: Apr. 21, 2026; Filed: July 20, 2026
_____

OPINION OF THE COURT

BIBAS, *Circuit Judge*. When tragedy strikes, people naturally look for someone to blame. But tragedy does not create duty.

A pump manufacturer made paint pumps and installed them in a paint-mixing room. Two months later, a fire broke out in

the room and ignited the contents of some pumps, killing two workers and badly burning a third. They and their estates sued the manufacturer for not giving them enough safety training. But it never agreed to give them full safety training or to oversee workplace safety, so it had no duty to do so. We will thus affirm the District Court's summary judgment for the manufacturer.

## I. THE FATAL FIRE IN THE PAINT-MIXING ROOM

The U.S. Army repaints and repairs its ammunition, vehicles, and the like at the Letterkenny Army Depot in south-central Pennsylvania. The Depot built a paint-mixing room, where workers used pumps to transfer paint and paint thinner from 55-gallon drums into a paint-mixing carousel. It later hired Finishing Systems to upgrade the paint-mixing pumps and train employees for a few hours on how to use and maintain them. Finishing's subcontractor bought the pumps from Carlisle Fluid Technologies.

As part of that deal, Carlisle agreed to install the pumps and "assist and train … personnel in the correct use, care and maintenance of the equipment." App. 461, 478. The contract did not specify how long the training had to be. After Carlisle installed its pumps, its employee Mark Hagedorn spent somewhere between half an hour and two hours training the Depot's employees. Hagedorn testified that he familiarized employees with the system, pointed out the system's components, and explained how to transfer paint from drums into the holding tank. That included how to start the pump, how to read pressure gauges, and how to adjust pressures.

Hagedorn's training did not cover safety. One safety hazard is that paint thinners are highly flammable. Thus, workplace-safety rules require workers to wear clothing that not only resists fire, but is also anti-static, to avoid generating sparks. There is no evidence that Hagedorn mentioned any of that.

Two months later, workers in the paint-mixing room went to swap out an empty drum of paint thinner. They were wearing ordinary street clothes, not proper anti-static ones. One opened the empty drum, releasing residual paint-thinner vapors. "[S]tatic discharge" sparked a major fire, killing two employees, severely burning a third, and forcing others to witness the horror. App. 662.

After this inferno, the survivors and decedents' estates sued nearly two dozen defendants. All that remain are a few claims against a single defendant. Plaintiffs claim that the pump manufacturer, Carlisle, was generally negligent, negligently inflicted emotional distress, and is liable for wrongful death. The District Court granted Carlisle summary judgment, finding that it owed the workers no duty of care when it trained them on the paint-mixing equipment. We review summary judgment de novo, including whether Carlisle owed plaintiffs a duty. *Tundo v. County of Passaic*, 923 F.3d 283, 286–87 (3d Cir. 2019).

## II. BECAUSE CARLISLE UNDERTOOK ONLY TO SELL & INSTALL PAINT PUMPS & GIVE MINIMAL TRAINING, IT OWED NO BROADER DUTY TO TRAIN WORKERS ON SAFETY

Plaintiffs claim that Carlisle was negligent because it failed to train the workers to operate the pumps safely. Those claims sound in tort, not contract. Pennsylvania law follows the Second Restatement of Torts. *Cantwell v. Allegheny County*, 483

A.2d 1350, 1353 (Pa. 1984). Under the Restatement, one who performs services may owe a tort duty to third parties injured by his negligent performance. Restatement (Second) of Torts § 324A (A.L.I. 1965). Still, that duty extends no further than the undertaking itself. *Cf. Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 263 (3d Cir. 2010).

Carlisle undertook only to sell and install pumps and provide basic operational training. Even so, plaintiffs argue that Carlisle assumed a broader duty to them because it "had superior knowledge of [the pumps'] hazards" and instructed users to read safety manuals and get training. Appellants' Br. 12. But Carlisle's duty is only as broad as its undertaking, not its "superior knowledge." *Id.* Nor do general warnings or manuals expand those duties. Because Carlisle never undertook to give the Depot's employees comprehensive safety training, it owed them no duty to do so.

The Restatement confirms as much. Section 324A recognizes liability in only three circumstances: (1) when a defendant's negligent performance increases the risk of harm to another; (2) when he undertakes a duty that someone else owes to a third party; or (3) when harm results from reliance on his undertaking. This case fits none.

### A. Carlisle did not increase the risk of harm to the workers

First, a contracting party can be liable in tort when its negligence increases the risk of harm to third parties. For instance, a train dispatcher's negligence could cause a wreck, injuring passengers. Restatement (Second) of Torts § 324A, cmt. c. Or a repairman could fix a grocery store's light carelessly, causing

4

it to fall on a customer. *Id.*, cmt. c., illus. 1. Or an electric-company repairman could fix a utility pole badly, causing a funeral home to burn down. *Alderwoods (Pa.), Inc. v. Duquesne Light Co.*, 106 A.3d 27, 29–30, 42 (Pa. 2014). But plaintiffs do not allege that Carlisle installed its pumps poorly or flubbed a repair, thus increasing the risk that they would explode. So this basis does not apply.

**B. Carlisle did not assume the Depot's duty to train its workers**

Second, a contracting party can be liable in tort when it takes over a duty that someone else already owes to third parties. For instance, building owners owe visitors a duty to keep them safe. If a building manager agrees to take responsibility for the building, it assumes that duty too. Restatement (Second) of Torts § 324A, cmt. d.

But assuming a duty requires a specific undertaking, not just general services. Most often, the contract defines the duty. Sometimes, a contracting party can incur a duty beyond that contractual obligation while performing his services. But still, that duty is closely tied to the actual services voluntarily undertaken. Thus, when a contractor explicitly agreed to monitor safety on a highway construction project, it owed a duty to workers on site. *Farabaugh v. Pa. Tpk. Comm'n*, 911 A.2d 1264, 1268–69, 1283 (Pa. 2006). By contrast, in a different case, a contractor owed no duty to an injured worker because it never agreed to "assur[e] compliance with safety procedures." *Id.* at 1282 (distinguishing *Marshall v. Port Auth. of Allegheny Cnty.*, 568 A.2d 931, 936–37 (Pa. 1990)).

5

So too here. The *Depot* may have owed its workers a duty to train them on how to handle paint thinner safely. But *Carlisle* agreed to teach them only about tasks related to using the newly installed equipment, like how to turn its pumps on and off and read the pressure gauges—not how to avoid accidents while mixing paint. Any safety training was incidental and directly related to operating the pumps. Carlisle did not assume all of the Depot's duties to protect workers in the paint-mixing room.

## C. The workers could not rely on Carlisle for general safety training

The final basis for liability is reliance. If the Depot or the workers forwent safety precautions in reliance on Carlisle's undertaking, Carlisle could owe them a tort duty. Pennsylvania cases apply this principle to safety, inspection, and oversight services. Even then, the duty is limited to what the contractor specifically undertook. For instance, if a landlord chooses to provide security services, it owes tenants a duty to do only what it has promised. *Feld v. Merriam*, 485 A.2d 742, 746–47 (Pa. 1984). If it contracts to provide just one security guard, tenants cannot rely on the protection of two. *Id.* Similarly, when an elevator company was hired to inspect a freight elevator and someone was later injured while running the elevator, the company owed him a duty to inspect it with reasonable care. *Evans v. Otis Elevator Co.*, 168 A.2d 573, 575–76 (Pa. 1961). And when a nursing-home operator promised ongoing oversight of patient care through regular visits and reviews, the operator owed patients a duty to do that reasonably. *Scampone v. Grane Healthcare Co.*, 169 A.3d 600, 618–19 (Pa. Super. Ct. 2017). In each case, the undertaking both created and limited the duty.

Even in the workplace, limited services do not create broad safety duties. For instance, an insurer may choose to inspect a workplace and offer advice on how to reduce accidents. But that does not trigger a duty to inspect every machine and discover a missing blade guard. *Evans v. Liberty Mut. Ins. Co.*, 398 F.2d 665, 667 (3d Cir. 1968). Or if a trucking company gives its subsidiaries general training materials and safety guidance, that does not trigger a duty to ensure overall workplace safety. *Walls v. FTS Int'l, Inc.*, 2019 WL 96247, at *4–5 (W.D. Pa. Jan. 2, 2019).

Seeking to broaden Carlisle's duty, plaintiffs rely on one more case, but it is inapt. In that case, a doctor had failed to report signs of child abuse. The appellate court reversed summary judgment for the doctor, holding that he owed the abused baby a duty of care. *K.H. ex rel. H.S. v. Kumar*, 122 A.3d 1080, 1096–97 (Pa. Super. Ct. 2015). But that duty rested on the special relationship between a doctor and his patient, *not* on a generic tort duty. *Id.* There is no such special relationship here.

Carlisle focused on teaching Depot workers how to work its pumps, using both instruction manuals and in-person training. In doing so, it touched on some safety issues. Yet incidentally instructing workers is different from promising to monitor, like the nursing-home operator in *Scampone*, or to provide safety measures, like the security guard in *Feld*. Even if it were not, plaintiffs could not expect one guard to do the work of two—in this case, for mainly *operational* training to cover comprehensive *safety* instruction.

\* \* \* \* \*

7

Tort law carefully limits liability to those with duties. Promising to perform a service creates some duties, but no more than what is promised. The Depot might have had a duty to train workers on how to work safely. But Carlisle just made and sold paint pumps and showed workers how to use them. That limited undertaking was not enough to assume the Depot's safety duties or make the workers rely on Carlisle to teach them to do their jobs safely. Because Carlisle's commitment was narrower than that, we will AFFIRM.

*Counsel for Appellants*

Charles L. Becker        [Argued]
Ruxandra M. Laidacker
Corrie A. Woods
KLINE & SPECTER

*Counsel for Appellee*

Glenn M. Campbell      [Argued]
POST & SCHELL